The slip opinion is the first version of an opinion released by the Clerk of the Court of Appeals. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Clerk of the Court for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number: _____

Filing Date: July 31, 2026

**No. A-1-CA-41414**

**STATE OF NEW MEXICO,**

      Plaintiff-Appellee,

v.

**GEORGE NAYMAN,**

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF CHAVES COUNTY**
**Jared G. Kallunki, District Court Judge**

Raúl Torrez, Attorney General
Benjamin L. Lammons, Assistant Solicitor General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Mallory E. Harwood, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**OPINION**

**WRAY, Judge.**

{1}     Defendant appeals from a jury verdict that convicted him for breaking and entering, contrary to NMSA 1978, Section 30-14-8 (1981), after a probation officer received an alert that the electronic monitoring device (EMD) that Defendant was wearing had alerted at 3 a.m. inside the home of his ex-wife, Cynthia Boles (Cynthia or ex-wife). On appeal, Defendant raises unpreserved challenges to the district court's admission of evidence relating to his underlying conviction for aggravated stalking of his ex-wife, the State's use of that evidence, and the effectiveness of his trial counsel. We affirm and write formally only to confirm that unpreserved errors may be reviewed as part of a cumulative error challenge.

**BACKGROUND**

{2}     In September 2021, Defendant was charged with aggravated stalking of his ex-wife. He pleaded no contest and was sentenced to incarceration, followed by probation. After release from prison, Defendant was provided with an EMD to allow for GPS monitoring. Defendant's primary probation officer received a notification that Defendant's EMD had "ping[ed] directly in [Cynthia's] house" at approximately 3 a.m. on the day after receiving the EMD. Cynthia testified that she was not at home when the EMD pinged in her residence and that she had not given Defendant permission to be in or around her house. She testified that when she returned, she

discovered some items disturbed in her home, including a stick that she had placed in a bedroom window track to keep the window secured. The day after the EMD ping, Defendant was arrested, and he was eventually charged with breaking and entering.

{3} The day before trial, the State filed a motion in limine to introduce evidence of the aggravated stalking conviction, including the judgment and sentence (the J&S) and the affidavit attached to the criminal complaint (the Affidavit). The Affidavit included details about the divorce and the restraining order as well as some description of the threatening acts that led to the stalking conviction. The State argued that (1) a copy of "Defendant's prior conviction and a copy of the Affidavit attached to the original charging document" were relevant to establish that the same victim was involved and why Defendant wore an EMD; and (2) the proper purpose to justify admitting this evidence of other acts was "lack of mistake, knowledge, motive, and the intent" to show that Defendant knew "he was not to have any contact with" his ex-wife. Before jury selection, Defendant's counsel (trial counsel) stipulated to the State's motion in limine in full to the admission of the reporting map for the EMD (the EMD Map), and to a list of specific facts.

{4} In accordance with the pretrial stipulations and the district court's ruling, the prosecutor emphasized the prior conviction and Defendant's past acts in opening arguments. The prosecutor referred to the evidence that would establish Defendant's

history with Cynthia, why "he was not allowed on her property," and that because of the prior conviction for stalking, Defendant was "told to stay away and he just wouldn't." The EMD map and the J&S were displayed to the jury during Cynthia's testimony, and she relayed the details of Defendant's prior conviction, the restraining order, and her "multiple" difficulties with Defendant since the divorce.

{5} The probation officer who arrested Defendant also testified about the fact that the prior conviction happened, the identity of the victim, and the terms of Defendant's probation. The prosecutor asked whether the probation officer would have thought the ping from Cynthia's house was an error if items inside had not been disturbed, and the probation officer responded, "Possibly, yes, but because of the instances where [Cynthia] had told us, you know, what had gone on in the house, it was safe to assume that it was a breaking and entering." After the probation officer testified that the time the ping occurred was "even more alerting," the prosecutor followed up by asking "Okay, because what was he actually on probation for?" and the probation officer responded, "Aggravated stalking" and confirmed that he had made himself "familiar with the events that led to that conviction."

{6} The probation officer then testified about Defendant's arrest, transportation to jail, and the events that occurred during the booking process. The probation officer described Defendant's behavior after the arrest as escalating from "asking for second chances" to more aggressive threats. The probation officer testified that on arrest,

Defendant admitted to drinking and stated, "He didn't deserve to go to jail." During the transport to jail, the probation officer testified that Defendant "started making more aggressive statements" and "got louder," to the point that the probation officer "notified the jail that [they] might have a possible combative detainee that [they] were booking in." The prosecutor asked, "Would you please quote him for the jury?" and the probation officer responded, "He told me, 'they can't keep me in here forever, I'll get out and I'll kill you eventually'" and later stated, "He could kick all of our asses" and flashed his gang tattoo. The probation officer testified that following those threats, he "stepped outside" the holding cell but then heard a scream, and when the probation officer ran back, Defendant "was handcuffed to the bench and was actively trying to reach for [the other probation officer], trying to slip his handcuffs, saying that he would give her a reason to send him to prison." The prosecutor finished the direct examination by noting, "It's a lucky thing [Cynthia] wasn't home that night, isn't it?" The probation officer responded, "Absolutely." The other probation officer, who had assisted in the arrest, also testified and provided a similar, though abbreviated, version of Defendant's threatening acts. Though trial counsel was active throughout trial, during the arguments and examinations that we have set forth, trial counsel generally did not object.

{7}     Defendant testified and explained that he did not know whether the EMD accurately reported his location for some of the pings but denied that the ping inside

Cynthia's house was accurate. On cross-examination, the prosecutor asked whether Defendant had been convicted for stalking his ex-wife. Defendant responded, "Well, I mean, all I know is that I broke a restraining order and it came—it became stalking. And that was because she stole my car. The reason I went over there was for that reason." The prosecutor republished the J&S exhibit, over trial counsel's objection, and reviewed the conditions of probation contained in the J&S. When the prosecutor asked Defendant why he was walking near Cynthia's house, Defendant acknowledged that that he did walk past Cynthia's house, but not intentionally, and when he realized that he was too close, he returned to where he was staying. Defendant was also asked to comment on the past acts that his ex-wife had described in her testimony and whether he had ever previously "taken any actions to force [his] contact with" Cynthia. Defendant responded, "I mean, in the past, I mean, when we were having our altercations, when we were still married, I mean—yeah, during that time we—we were both—I mean, she was coming around me too. It was a two-way street here. It wasn't just a one-way thing."

{8} In closing, the prosecutor incorporated a great deal of the admitted testimony and evidence about the parties' prior relationship. The jury found Defendant guilty of breaking and entering, and this appeal followed.

**DISCUSSION**

{9}     On appeal, Defendant challenges the admission of evidence, the conduct of the prosecutor, and the effectiveness of trial counsel. Defendant concedes that he did not object to the admission of evidence, that the issues are not preserved for review, and that therefore, our review is generally more deferential. *See State v. Chavez*, 2024-NMSC-023, ¶ 10, 562 P.3d 521 ("Unpreserved evidentiary errors are reviewable on appeal under a plain error standard."); *State v. Lozoya*, 2017-NMCA-052, ¶ 36, 399 P.3d 410 ("When . . . no claim of prosecutorial misconduct was raised at trial, this Court reviews for fundamental error."); *Garcia v. State*, 2010-NMSC-023, ¶ 28, 148 N.M. 414, 237 P.3d 716 ("Although we are reluctant to consider an ineffective assistance of counsel claim on appeal without an evidentiary hearing, we generally do not demand preservation of the issue because effective assistance of counsel is a fundamental right." (citation omitted)). Defendant also argues that the accumulation of errors and irregularities[1] resulted in a "perfect storm" and a

---

[1] We note that our cumulative error analysis addresses both errors and irregularities that occurred at trial. *See State v. Jett*, 1991-NMSC-011, ¶ 29, 111 N.M. 309, 805 P.2d 78 (noting cumulative error assesses "prejudicial errors or irregularities"). An "error" is either a structural defect or a decision by the court that is a mistake of law or fact, while an "irregularity" is a lack of compliance with procedure or the rules of the court. *Cf. Ealy v. McGahen*, 1933-NMSC-033, ¶ 22, 37 N.M. 246, 21 P.2d 84 (defining an irregular judgment as one "contrary to the course of the court . . . to the method of procedure . . . allowed by law" and an "erroneous judgment is one rendered contrary to law"); *Am. Nat'l Bank of Tucumcari v. Tarpley*, 1926-NMSC-046, ¶ 9, 31 N.M. 667, 250 P. 18 ("Irregularities do not result from adjudications, and in that respect are to be distinguished from errors." (internal

fundamentally unfair trial. The State responds that (1) no plain error or prosecutorial misconduct occurred primarily because Defendant's trial counsel contributed to the errors—invited the errors—by stipulating to the admission of the J&S and the Affidavit, *see State v. Adamo*, 2018-NMCA-013, ¶ 52, 409 P.3d 1002 ("New Mexico recognizes the doctrine of invited error."); (2) the record on direct appeal does not demonstrate trial counsel's ineffectiveness because Defendant cannot show that the outcome of the trial would have been different absent trial counsel's errors; and (3) ample evidence supported the verdict. We first briefly consider the asserted errors individually and then assess their cumulative impact.

## I.      Individual Error

{10}    Defendant makes three related arguments for individual error. First, Defendant argues that the admission of two categories of evidence was plain error: (1) the testimony, commentary, and documentary evidence regarding Defendant's prior conviction for aggravated stalking (the prior conviction evidence); and (2) evidence relating to Defendant's post-arrest conduct (the post-arrest conduct evidence). Second, Defendant contends that the State engaged in prosecutorial

---

quotation marks and citation omitted)); *Northcutt v. King*, 1917-NMSC-083, ¶ 3, 23 N.M. 515, 169 P. 473 ("The term 'irregularity' is defined to be the want of adherence to some prescribed rule or mode of proceeding; and it consists either in omitting to do something that is necessary for the due and orderly conducting of a suit, or doing it in an unseasonable time or improper manner." (internal quotation marks and citation omitted)); *State v. Rodriguez*, 1992-NMCA-088, ¶ 15, 114 N.M. 265, 837 P.2d 459 (discussing a "structural defect" as a type of error).

misconduct by focusing on the prior conviction evidence and post-arrest conduct evidence to suggest that Defendant was a dangerous person and a "stalker," and eliciting testimony from Defendant about Cynthia's credibility.[2] Third, Defendant maintains that trial counsel was ineffective because he was not prepared to cross-examine the probation officer about the EMD, stipulated to the prior conviction evidence, and did not object to the irregularities that he now identifies in the State's presentation.

{11}    To an extent, we agree that some of the stipulated evidence and other related evidence should not have been admitted, the State's presentation may have exceeded accepted boundaries of propriety, and trial counsel's performance may have been defective in some respects. *See* Rule 11-802 NMRA (describing the rule against hearsay); *State v. Marquez*, 2023-NMSC-029, ¶ 19, 539 P.3d 303 (explaining that

---

[2]Defendant also points to the State's comment about the consequences of the verdict and misstatement about the burden of proof. After the State commented on the potential consequences of a guilty verdict in closing, the district court intervened and instructed the jury, and while the State's assertions in rebuttal about the burden of proof could be viewed as misleading, the jury received an instruction with the correct standard. *See State v. Diaz*, 1983-NMCA-091, ¶ 18, 100 N.M. 210, 668 P.2d 326 ("Counsel may not misstate the law."); *State v. Garcia*, 2005-NMSC-017, ¶¶ 10-11, 138 N.M. 1, 116 P.3d 72 (explaining that "UJI 14–5060 [NMRA] adequately expresses th[e] definition" of the burden of proof and discouraging "reliance on . . . alternative formulations" of the standard); *State v. Sellers*, 1994-NMCA-053, ¶ 28, 117 N.M. 644, 875 P.2d 400 (holding that the possibility of jury confusion about a misstatement of the burden of proof was cured by the prosecutor's reference to the correct standard and the provision of written instructions). Because these irregularities were largely cured, we consider them only in the cumulative error analysis.

Rule 11-404(B) NMRA "incorporate[es] the prohibition on propensity evidence"); *State v. Fernandez*, 2023-NMSC-005, ¶¶ 13-15, 528 P.3d 621 (holding that a prior conviction for a violent crime has some probative value on a testifying defendant's "character for truthfulness" but it is "minimal compared to its inflammatory impact" for use in impeachment); *State v. Gallegos*, 2007-NMSC-007, ¶ 21, 141 N.M. 185, 152 P.3d 828 (warning that the state referencing past behavior elevates "the risk that a jury will convict for crimes" that are not charged or because the defendant deserves punishment (internal quotation marks and citation omitted)); *State v. Diaz*, 1983-NMCA-091, ¶¶ 14-15, 100 N.M. 210, 668 P.2d 326 (concluding that the prosecutors "vituperative language" such as calling the defendant a "yo[-]yo," "stupid," "thief," and a "crook" during trial was inflammatory and improper); *State v. Duran*, 2006-NMSC-035, ¶¶ 19, 21, 140 N.M. 94, 140 P.3d 515 (adopting a "strict prohibition upon asking the defendant if another witness is mistaken or lying"); *State v. Dartez*, 1998-NMCA-009, ¶ 34, 124 N.M. 455, 952 P.2d 450 (holding that the defendant established a prima facie case for ineffective assistance of counsel when trial counsel did not object to "the evidence of prior criminal conduct and comment on that conduct" that was "quite extensive and detailed").

{12}     Nevertheless, we need not precisely define any error, because these issues are unpreserved and we must conduct our review through that lens. Plain error requires a new trial "only if we have grave doubts about the validity of the verdict, due to an

error that infects the fairness or integrity of the judicial proceeding." *State v. Gwynne*, 2018-NMCA-033, ¶ 27, 417 P.3d 1157 (internal quotation marks and citation omitted). Prosecutorial misconduct results in fundamental error only if we are "convinced that the prosecutor's conduct created a reasonable probability that the error was a significant factor in the jury's deliberations in relation to the rest of the evidence before them" because either "guilt is so doubtful as to shock the conscience, or . . . there has been an error in the process implicating the fundamental integrity of the judicial process." *State v. Sosa*, 2009-NMSC-056, ¶ 35, 147 N.M. 351, 223 P.3d 348 (internal quotation marks and citation omitted). To establish a prima facie case for ineffective assistance of counsel, Defendant must establish both that trial counsel's performance was defective and also "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *See State v. Brazeal*, 1990-NMCA-010, ¶ 23, 109 N.M. 752, 790 P.2d 1033 (internal quotation marks and citation omitted).

{13}    For any of these arguments to result in reversible error, we must have some doubt about the verdict, serious concern about the effect on the overall fairness of the proceeding, or indication that the outcome of the trial might have been different but for counsel's errors. *Cf. State v. Garvin*, 2005-NMCA-107, ¶ 13, 138 N.M. 164, 117 P.3d 970 ("The doctrine of fundamental error is to be resorted to in criminal cases only for the protection of those whose innocence appears indisputably, or open

to such question that it would shock the conscience to permit the conviction to stand." (internal quotation marks and citation omitted)); *State v. Chavez*, 2024-NMSC-023, ¶¶ 11, 36, 562 P.3d 521 (explaining "the focus of plain error review is on the fairness of the trial" but we also review "the impact of the error on [the d]efendant's rights and the jury's verdict"); *Dartez*, 1998-NMCA-009, ¶ 26 ("In order to establish prejudice, the defendant must show that there is a reasonable probability that, but for [their] attorney's errors, the result of the proceeding would have been different."). The verdict in the present case was supported by the EMD ping, Cynthia's testimony about the discovery and relevance of the disturbed items in the home, the admissible fact of the prior conviction for stalking Cynthia, and Defendant's testimony that he was present nearby. *See Gwynne*, 2018-NMCA-033, ¶ 27. Some of the post-arrest conduct evidence was admissible. *See Chavez*, 2024-NMSC-023, ¶ 31 (noting that "it has long been recognized that consciousness of guilt has independent relevance and therefore "constitutes a permissible use of other acts or wrongs under Rule 11-404(B)" (omission, internal quotation marks, and citation omitted)). The post-arrest conduct evidence was brief and does not create "grave doubts about the validity of the verdict." *See Gwynne*, 2018-NMCA-033, ¶ 27 (internal quotation marks and citation omitted). The State's insinuations related to the prior conviction evidence and the post-arrest conduct evidence were repeated and were not directly responsive to Defendant's arguments,

but the comments invaded no distinct constitutional protection, do not shock the conscience, and do not implicate "the fundamental integrity of the judicial process." *See Sosa*, 2009-NMSC-056, ¶¶ 26, 35 (outlining the three considerations for evaluating prosecutorial misconduct and identifying the fundamental error standard). Nor does Defendant establish on direct appeal that but for any error by trial counsel in preparation, stipulation, and declining to object, "the result of the proceeding would have been different." *See Brazeal*, 1990-NMCA-010, ¶ 23.[3] As a result, Defendant has not demonstrated that the unpreserved errors and irregularities or trial counsel's performance warrant a new trial.

## II. Cumulative Error

{14} Defendant argues that his right to a fair trial was violated by (1) the cumulative evidentiary errors; and (2) the cumulative prosecutorial misconduct. Nearly all of the errors or irregularities identified by Defendant were unpreserved. Our Supreme Court has reviewed unpreserved error for cumulative error by "determin[ing] whether their accumulation amounted to fundamental error." *See State v. Martin*, 1984-NMSC-077, ¶¶ 3, 18, 101 N.M. 595, 686 P.2d 937 (considering prosecutorial misconduct); *see also State v. Gutierrez*, 2003-NMCA-077, ¶ 19, 133 N.M. 797, 70

---

[3] Nothing in this opinion forecloses Defendant's opportunity to pursue a habeas corpus proceeding. *See State v. Crocco*, 2014-NMSC-016, ¶ 24, 327 P.3d 1068.

P.3d 787 (applying the plain error standard to "errors in evidentiary matters").[4] Again, for either fundamental or plain error to apply, the accumulation of errors and irregularities must render guilt so doubtful that it would shock the conscience or undermine judicial integrity (for the purposes of fundamental error) or affect substantial rights (for the purpose of plain error). *See Gutierrez*, 2003-NMCA-077, ¶¶ 18-19 (describing the standards). In this context, the individual errors and irregularities are but "ingredient[s] in a cumulative error analysis." *See Garvin*, 2005-NMCA-107, ¶¶ 14, 29; *see also State v. Duffy*, 1998-NMSC-014, ¶ 47, 126 N.M. 132, 967 P.2d 807 (noting that "under the doctrine of cumulative error, a series of lesser prosecutorial improprieties may amount to reversible error"), *overruled on other grounds by State v. Tollardo*, 2012-NMSC-008, ¶ 37 n.6, 275 P.3d 110. Nevertheless, we are mindful that "[t]he doctrine of cumulative error is to be strictly applied, and cannot be invoked if the record as a whole demonstrates that the

---

[4]This analysis is not without complexity. *See United States v. Caraway*, 534 F.3d 1290, 1301-02 (10th Cir. 2008) (discussing the complexity of evaluating harmless, preserved, and unpreserved error together for cumulative error); *United States v. Starks*, 34 F.4th 1142, 1170 (10th Cir. 2022) (providing a step-by-step analysis for cumulative error to aggregate preserved and unpreserved errors); *State v. Begay*, 1998-NMSC-029, ¶¶ 21-23, 125 N.M. 541, 964 P.2d 102 (discussing how a structural defect—a "total deprivation of [a] right"—is distinct from a harmless error, plain error, or fundamental error); *cf. United States v. Cristerna-Gonzalez*, 962 F.3d 1253, 1268 (10th Cir. 2020) (suggesting unpreserved evidentiary error can be aggregated in a cumulative error review only if the "errors" are "plain"). The parties do not wade into those complexities, and because we are satisfied that cumulative error did not result, neither do we.

defendant received a fair trial." *State v. Carrillo*, 2017-NMSC-023, ¶ 53, 399 P.3d 367 (alterations, internal quotation marks, and citation omitted).

{15} The record does not establish cumulative fundamental or plain error arising from the aggregation of errors or irregularities involving the prior conviction evidence, the post-arrest conduct evidence, the prosecutor's presentation, and trial counsel's performance. As with the individual challenges, to warrant a new trial based on aggregated unpreserved cumulative errors or irregularities, those errors and irregularities all together must cause us to doubt the verdict or the fairness of the trial. *See Gwynne*, 2018-NMCA-033, ¶ 27 (considering plain error); *Sosa*, 2009-NMSC-056, ¶ 26 (considering prosecutorial misconduct); *Brazeal*, 1990-NMCA-010, ¶ 23 (considering ineffective assistance of counsel). As we have noted, the evidence otherwise supported the verdict, including the EMD ping inside Cynthia's house, Cynthia's testimony, the disturbed items, the fact of the prior conviction for stalking Cynthia, and Defendant's admissions. None of the unpreserved errors or irregularities, even in the aggregate, interfered with Defendant's ability to meaningfully defend himself or present his theory to the jury. *See State v. Baca*, 1995-NMSC-045, ¶ 39, 120 N.M. 383, 902 P.2d 65 (requiring a new trial based on cumulative error when the errors prevented the defendant from rebutting evidence and introducing impeachment evidence). We cannot conclude the verdict was

"inherently unreliable" or that Defendant was "deprive[d]" of a fair trial. *See Carrillo*, 2017-NMSC-023, ¶ 53.

{16}    The only preserved error is the State's reference to the potential consequences of the verdict, which was cured by the district court. Because Defendant has not established that the cumulative unpreserved errors, alongside a single, cured error, result in either fundamental or plain error, we hold cumulative error does not require a new trial.

**CONCLUSION**

{17}    We affirm.

{18}    **IT IS SO ORDERED.**


_____
**KATHERINE A. WRAY, Judge**

**WE CONCUR:**


_____
**J. MILES HANISEE, Judge**


_____
**KRISTOPHER N. HOUGHTON, Judge**